UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARCUS SWAN,                                                              Petitioner,

v.                                            Civil Action No. 3:12-cv-826-DJH-HBB

AARON SMITH, et al.,                                    Respondents.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Petitioner Marcus Swan, proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Docket No. 1) The Court referred this matter to Magistrate Judge H. Brent Brennenstuhl for initial review and recommendation. (D.N. 7, 24, 27) Judge Brennenstuhl recommends that the Court deny Swan's petition. (D.N. 29) For the reasons outlined below, the Court agrees and will deny Swan's petition.

### I. BACKGROUND

On May 8, 2008, Swan violently invaded Brandon Lumpkins's home in Louisville, Kentucky. (D.N. 29, PageID # 386) Lumpkins and another man were shot. (*Id.*) Swan and his accomplice threatened to kill Lumpkins's two-year-old daughter unless Lumpkins turned over money, drugs, and guns. (*Id.*) Following trial, a jury convicted Swan of "four counts of first-degree robbery, one count of first-degree burglary, two counts of first-degree assault, six counts of first-degree wanton endangerment, and one count of tampering with physical evidence, all by a complicity theory," and sentenced him to a term of 70 years' imprisonment. (D.N. 16-7) Swan directly appealed his conviction to the Kentucky Supreme Court, which affirmed his conviction and sentence. *Swan v. Commonwealth*, 384 S.W.3d 77 (Ky. 2012); (*Id.*, PageID # 387). Because the Kentucky Supreme Court ruled on the grounds asserted in Swan's habeas petition

1

before this Court, he has complied with the exhaustion requirement under 28 U.S.C. § 2254. *Manning v. Alexander*, 912 F.2d 878 (6th Cir. 1990).

In his petition, Swan asserts two grounds for relief. (D.N. 1, PageID # 5, 7) He first argues that the trial court should have held a *Faretta* hearing when he asked to proceed as his own co-counsel. (*Id.*; D.N. 29, PageID # 389); *see Faretta v. California*, 422 U.S. 806 (1975). Swan also contends that the prosecution destroyed material evidence in violation of *Brady*, and, as a result, the Kentucky Supreme Court should have evaluated his missing-evidence claim under *Brady v. Maryland*, 373 U.S. 83 (1963). (D.N. 1, PageID # 7; D.N. 29, PageID # 392)

Judge Brennenstuhl recommends that Swan's petition be denied with respect to each claim. (D.N. 29) Swan objects, arguing that Judge Brennenstuhl failed to apply the presumption of correctness to his *Faretta* claim and mistakenly applied *Arizona v. Youngblood*, 488 U.S. 51 (1988), instead of *Brady*, to his destruction-of-evidence claim. (D.N. 30)

## II.    ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides relief to a habeas petitioner if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). This clause applies "if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The AEDPA also provides relief if the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This occurs when "the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that

2

principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Swan bears the burden of showing that "the state court applied [a Supreme Court case] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

To determine if relief is warranted under the AEDPA, the Court will review de novo the portions of Judge Brennenstuhl's recommendation to which Swan objects. 28 U.S.C. § 636(b)(1).

### A. *Faretta* Hearing

Swan first argues that Judge Brennenstuhl failed to apply the presumption of correctness[1] to his claim that the trial court erred in denying him a *Faretta* hearing. (D.N. 30, PageID # 407) A Court must conduct a *Faretta* hearing when a defendant clearly requests to proceed pro se. *U.S. v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004). The *Faretta* hearing "offers a court ample opportunity to assure that a defendant understands and accepts the consequences of his decision [to proceed pro se], and to create a record to support its finding of a knowing waiver." *Raulerson v. Wainwright*, 469 U.S. 966, 970 (1984). Swan contends that his request to Jefferson County Circuit Judge Audra Eckerle during a pre-trial conference to act as his own counsel should be interpreted as a request to proceed pro se, and not as mere co-counsel. (D.N. 30, PageID # 407) But the following exchange between Swan and Judge Eckerle indicates that Swan intended to proceed as his own co-counsel:

    Swan: I want to represent myself as my own co-counsel during the rest of the trial if it [is] okay with the court.
    Court: Why would you want to do that?
    Swan: Because I want to be able to speak on my own case.

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be *presumed to be correct*. The applicant shall have the burden of rebutting the *presumption of correctness* by clear and convincing evidence." 28 U.S.C. §2254(e)(1) (emphasis added).

3

> Court: Okay. You understand—
> Swan: If I feel something's going wrong.
> Court: You understand you're represented by an attorney. You don't have a law degree. He does.
> Swan: Right. But I still would like to say something if I feel something's out of place during trial.
> Court: Why don't you say something to your attorney and you can work on it together.
> Swan: So, it is my right, you know what I am saying, to be able to speak. So you telling me I can't speak?
> Court: It's not exactly your right to serve as your own attorney. You can make, depending on if I feel that it is knowing and voluntary, which I'm not sensing from you today. But we can raise the issue again at trial and I can conduct a full *Faretta* hearing. So we[']ll do that the morning of trial.
> Swan's Counsel: Thank you.
> Court: It appears unwise, okay.

(D.N. 29, PageID # 389-90 (citing *Swan*, 384 S.W.3d at 92). Even though Judge Eckerle indicated to Swan that he could raise the issue at trial, he never again requested to proceed as co-counsel or pro se following this exchange.[2] (D.N. 29, PageID # 390)

The transcript demonstrates conclusively that the request by Swan was to act as his own co-counsel, not to proceed pro se. A pro se defendant fully waives his constitutional right to counsel and assumes the whole of his representation; a defendant proceeding as co-counsel waives only in part the right to counsel and acts as his own counsel along with retained or appointed counsel. *See, e.g.*, *Cromer*, 389 F.3d 662. Not only did Swan state that he wished to act as his "own co-counsel," but he also described his intention to act in concert with his current counsel—and only when he felt something was going wrong—as opposed to acting entirely on his own. *Swan*, 384 S.W.3d at 92. Swan ignores this important distinction and argues that Judge Eckerle actually interpreted his request as one to proceed pro se. (*Id.*; D.N. 29, PageID # 391-92) Swan presumably bases this argument on Judge Eckerle's statement that if Swan raised the issue again at trial, she would conduct a *Faretta* hearing. (D.N. 29, PageID # 389-90) Under

---

[2] While the Kentucky Supreme Court concluded that Swan abandoned his request, this finding is not dispositive here. *Swan*, 384 S.W.3d at 94.

4

federal law, a *Faretta* hearing "is *only* necessary once the defendant has made an articulate and unmistakable demand to proceed pro se," but not when the defendant merely seeks to supplement his counsel's representation. *Cromer*, 389 F.3d at 681-82 (internal quotations omitted) (emphasis added). Under Kentucky law, however, a *Faretta* hearing is required when a defendant expresses a desire to act either as co-counsel or proceed pro se. *Mitchell v. Commonwealth*, 423 S.W.3d 152, 160 n.3 (Ky. 2014). So it would be inconsistent with Kentucky law and common sense to conclude that Judge Eckerle's reference to a potential *Faretta* hearing meant that she interpreted Swan's request as one to proceed pro se. Judge Brennenstuhl concluded that Swan's request was to act as co-counsel.[3] This Court agrees. Accordingly, Swan's objection on this ground is overruled.

B.  **Destruction of Evidence**

Swan contends that Judge Brennenstuhl and the Kentucky Supreme Court erred in applying *Youngblood* instead of *Brady* to his destruction of evidence claim. (D.N. 30) Under *Brady*, the Due Process Clause makes the good or bad faith of the State irrelevant when the State fails to disclose exculpatory evidence to the defendant. *Brady*, 373 U.S. 83. Under *Youngblood*, however, the Due Process Clause requires the Court to consider the good or bad faith of the State when the State fails to preserve potentially useful evidence. *Youngblood*, 488 U.S. 51. The Kentucky Supreme Court and Judge Brennenstuhl are correct that *Youngblood* applies "where the government fails to preserve evidence whose exculpatory value is indeterminate and only potentially useful to defendant." *Id*. at 57-58. And the destroyed evidence here—six guns confiscated from Lumpkins's home, but not the two guns used in the crime—had little, if any,

---

[3] Judge Brennenstuhl analyzed Swan's *Faretta* claim de novo because the Kentucky Supreme Court did not consider the federal constitutional component in Swan's claim. (D.N. 29, PageID # 390)

exculpatory value. (D.N. 29, PageID # 394) Swan claims that shell casings found in Lumpkins's house could have been used to impeach Lumpkins because the revolver that Swan used did not dispense shell casings. (D.N. 30, PageID # 402) But he is only speculating as to the evidence's materiality. At best, the exculpatory value is indeterminate and only theoretically useful, which is why this Court finds that both the Kentucky Supreme Court and Judge Brennenstuhl applied the correct standard. *See Youngblood*, 488 U.S. at 57-58.

Under the *Youngblood* standard, Swan had to show "(1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." *U.S. v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (citing *Youngblood*, 488 U.S. at 57-58). The first two elements of the test are related. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* (quoting *Youngblood*, 488 U.S. at 56 n.*). To establish bad faith, Swan must prove "official animus," or a "conscious effort to suppress exculpatory evidence." *Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 488 (1984)). Judge Brennenstuhl found that the Kentucky Supreme Court properly analyzed Swan's destruction-of-evidence claim using these factors. (D.N. 29, PageID # 394) This Court agrees.

Swan has failed to demonstrate that the prosecutor acted in bad faith. (D.N. 1, 30) He contends that the cumulative effect of the following circumstances establishes bad faith: (a) that the date of destruction actually occurred only a few days after he was notified, which may be true based on the Report of Destruction submitted to the Court (D.N. 30-1); (b) that Lumpkins, who

6

signed off on the destruction of the guns, was not the actual owner of the guns (*Id.*), which is true; and (c) that officers at the scene of the crime established materiality by performing a sniff test on the six confiscated guns. (D.N. 30, PageID # 400-03) These contentions, however, only suggest negligence on the part of the prosecution, not bad faith. *See Jobson*, 102 F.3d at 218 (holding that, under *Youngblood*, even though the government was negligent, and perhaps even grossly negligent, there was no evidence of bad faith). Swan fails to allege, or produce any evidence of, "animus" or a "conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488. And there is no evidence that the officers that destroyed the evidence knew the exculpatory value, if any, of the evidence that was destroyed. *See Youngblood*, 488 U.S. at 56 n.*.

The Court cannot conclude that the Kentucky Supreme Court applied *Youngblood* in an objectively unreasonable manner to the facts, nor was its conclusion contrary to established federal law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 413. Consequently, Swan's objection on this ground is overruled.

### III. CONCLUSION

Swan has failed to demonstrate that the Kentucky Supreme Court's decisions were contrary to or involved an unreasonable application of clearly established federal law, or that they were based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Furthermore, the Court agrees with Judge Brennenstuhl's conclusion that a certificate of appealability should be denied as to both of Swan's claims. (D.N. 29, PageID # 395) Accordingly, it is hereby

**ORDERED** as follows:

(1)    The Findings of Fact, Conclusions of Law and Recommendation of Magistrate Judge H. Brent Brennenstuhl (D.N. 29) are **ADOPTED** in full and **INCORPORATED** herein by reference.

(2)    Petitioner Marcus Swan's objections to the Findings of Fact, Conclusions of Law and Recommendation (D.N. 30) are **OVERRULED**.

(3)    A Certificate of Appealability shall be **DENIED** as to each claim in Petitioner's motion.

(4)    A separate Judgment shall issue this date.

December 11, 2015

**David J. Hale, Judge**
**United States District Court**